UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SIGHTING SYSTEM INSTRUMENTS, LLC, a Texas limited liability company, ET AL., | ) ) ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiffs, | ) | |
| | ) | 3:05-CV-1560-G |
| VS. | ) | |
| | ) | **ECF** |
| PRESTIGE LAW ENFORCEMENT, INC., a Georgia corporation, ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is the motion of Prestige Law Enforcement, Inc. ("Prestige")

and Amstech, Inc. (collectively, "the defendants") to stay and administratively close

the proceedings in this case.  For the reasons discussed below, the motion is denied.

### I.  BACKGROUND

On August 8, 2005, Sighting System Instruments, LLC ("SSI") and Good

Sportsman Marketing, LLC ("GSM") (collectively, "the plaintiffs") filed this action

seeking a declaration that the plaintiffs do not infringe U.S. Patent No. 6,622,414

("the '414 patent").  *See* Defendants' Motion and Supporting Memorandum to Stay

Case and Administrative Closure and Extension of Time to File Responsive Pleading

to the Complaint ("Defendants' Motion") at 1.  SSI manufactures the SSI laser bore

sighter -- the product at issue in this case -- and GSM is a distributor of the product.

*See* Plaintiffs' Response to Defendants' Motion to Stay ("Plaintiffs' Response") at 3.

GSM is a distributor of the SSI laser bore sighter.  *Id.*

On or about July 28, 2005, Prestige contacted SSI and GSM and accused them

of infringing the '414 patent.  *See* Plaintiffs' Response at 3.  Accordingly, on August 5,

2005, SSI filed this suit seeking a declaration that SSI has not infringed the '414

patent.  *Id.* at 4.  GSM joined the suit, seeking the same declaration, three days later.

*Id.*

On September 14, 2005, the defendants filed with the United States Patent

and Trademark Office ("USPTO") a "request for reissue" of the '414 Patent.  *See*

Reissue Patent Application Transmittal, *attached to* Defendants' Reply to Plaintiffs'

Response to Defendants' Motion to Stay ("Defendants' Reply").  As originally issued,

the '414 patent contains at least one independent claim and several dependent

claims.[*]  In their reissue application, the patent applicants seek to add two additional

independent claims to the '414 patent.  Defendants' Reply at 2.

---

[*]        The plaintiffs allege that the '414 patent contains only one independent
claim, Plaintiffs' Response at 5-6, but the defendants contend there are two,
Defendants' Reply at 2.

The defendants filed the present motion on September 15, 2005, seeking a stay and administrative closure of this case pending the USPTO's resolution of their application for reissuance of the '414 Patent.

## II. ANALYSIS

### A. Legal Standard

A district court has wide discretion to stay a pending matter in order to control its docket and benefit the interests of justice. *In re Ramu Corporation*, 903 F.2d 312, 318 (5th Cir. 1990). The decision to grant or deny a stay "is a matter of judgment and it is reviewed by the Court of Appeals only for abuse of discretion." *Exxon Corporation v. St. Paul Fire & Marine Insurance Company*, 129 F.3d 781, 784 (5th Cir. 1997). Moreover, the court's discretion to order a stay clearly includes the authority to stay a matter pending the resolution of proceedings in the USPTO. See *Gould v. Control Laser Corporation*, 705 F.2d 1340, 1341 (Fed. Cir.), *cert. denied*, 464 U.S. 935 (1983); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir.1988).

When determining whether to stay litigation pending resolution of proceedings by the USPTO, courts should consider three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corporation v. 3Com Corporation*, 69 F. Supp. 2d 404, 406-07 (W.D. N.Y. 1999). An

affirmative answer to the first and third questions weighs against granting a stay, and an affirmative answer to the second question weighs in favor of a stay.  Each of the factors in this three part test, which the court will refer to as the "*Xerox* test," is analyzed below.

## B.   Application of the "*Xerox* Test"

### 1.   *Would a stay unduly prejudice the plaintiffs?*

The plaintiffs contend the uncertainty caused by a stay will cause them harm in several ways.  First, they allege that the uncertainty raised by the defendants' allegations of infringement may create difficulty pricing products that include the laser bore sighter since the plaintiffs are unsure whether they will be required to pay royalties on the product.  *See* Plaintiffs' Response at 11.  Second, the plaintiffs note that SSI would suffer harm if it decides to invest money in efforts to design around the '414 patent and the court later determines there was no infringement.  *Id.*  Third, the plaintiffs argue that the defendants' threats to file suit against the plaintiffs' customers will have an adverse effect on the plaintiffs' sales.  *Id.*  The plaintiffs summarize their argument by noting that a stay would, in some ways, defeat their purpose in filing this case.  "Eliminating this uncertainty and harm is the very reason that Plaintiffs brought this declaratory judgment action."  *Id.*

The defendants respond to the plaintiffs' arguments regarding prejudice by urging that a stay of this suit may eliminate the need for a "potential second

- 4 -

infringement action." *See* Defendants' Reply at 2-3.  However, the *potential* for a later suit based on the reissued patent that *might* include new claims if they are accepted by the USPTO does not eliminate the very real prejudice the plaintiffs are suffering due to the uncertainty surrounding the defendants' claims of infringement.

The plaintiffs are trying, through prosecution of this action, to alleviate the harm caused by the defendants' allegations of infringement.  A stay delaying this suit indefinitely would clearly prejudice the plaintiffs.  Consequently, the first part of the *Xerox* test militates against granting a stay.

> 2. *Will a stay simplify the issues in question and the trial of the case?*

The second part of the *Xerox* test requires the court to examine the effect, if any, the proceedings pending before the USPTO will have on this case.  In their motion, the defendants argue that there will be several benefits if this case is stayed until the USPTO has rendered a decision on the application for reissue.  They contend a stay will:  (1) give experts at the USPTO the opportunity to analyze all relevant prior art; (2) alleviate discovery problems based on the USPTO's decisions; (3) make the case moot if the patent is invalidated; (4) encourage settlement based on the USPTO's action; (5) provide a record from the USPTO that will reduce the length and complexity of the litigation; (6) limit the issues, defenses and evidence relevant to this case; and (7) reduce costs to the parties and the court.  Defendants' Motion at 3-4.

The plaintiffs respond that the issues will not be simplified in the manner described by the defendants because the reissue proceedings involve the addition of new claims that can only broaden the scope of the patent rather than simplify and limit the issues before the court.  Plaintiffs' Response at 8-9.  To support this argument, the plaintiffs maintain that the defendants improperly rely on cases involving applications for reexamination and disputed applications for reissue rather than cases involving unopposed applications for reissue.  *Id.* at 9-10.  Such cases are different from the case before this court because reexamination proceedings and disputed reissue proceedings generally involve a challenge to the validity of an existing patent.  See *Patlex Corporation v. Mossinghoff*, 758 F.2d 594, 601-02 (Fed. Cir. 1985) (discussing the purpose of the reexamination statute); *National Tractor Pullers Association, Inc. v. Watkins*, 205 U.S.P.Q. 892, 910-11 (N.D. Ill. 1980) (discussing a contested reissue proceeding).  The present case, by contrast, involves a reissue proceeding initiated by the patentees in order to correct errors they identified in their own patent so that they can broaden its scope.  *See* Defendants' Motion at 2; Defendants' Reply at 2.

Furthermore, the plaintiffs emphasize that they are not challenging the validity of the patent in this case; they are simply seeking a determination that their product does not infringe the '414 patent.  Plaintiffs' Response at 9.  Because the validity of the '414 patent is not being examined, the USPTO will not have the opportunity to

invalidate the '414 patent and make this case moot.  Nor will the USPTO limit the issues for the court to review in determining whether the plaintiffs' product infringes the '414 patent, since the USPTO's inquiry will focus on expanding, rather than limiting, the scope of the patent.  Finally, the USPTO should have already analyzed the relevant prior art during the original prosecution of the '414 patent, thereby creating a record for this court to consider in determining whether the plaintiffs' product infringes on the patent.

Because the reissue application merely seeks to add new claims to the '414 patent, the plaintiffs posit that "whatever the outcome of the reissue proceeding, the same case and controversy that exists today will remain after the conclusion of that proceeding."  *Id.*  The defendants concede that the reissue application seeks to add additional claims but argue that the issues will be simplified by a stay because the addition of new claims to the patent may lead to another case if this one is resolved before the reissue proceedings are complete.  Defendants' Reply at 2.

The defendants' argument lacks merit.  There are two possible outcomes if the USPTO reissues the '414 patent:  (1) the reissued patent will be identical, or substantially identical, to the original patent; or (2) the reissued patent will contain two additional independent claims, which the defendants may then allege are also infringed by the plaintiffs' product.

If the claims in the reissued patent remain identical, or substantially identical, to the original claims, then the reissued patent is simply a continuation of the original patent.  35 U.S.C. § 252.  As a result, a cause of action based on reissued claims that are substantially identical in the original patent claims will remain unaffected by the patent's reissuance.  A stay under this scenario would needlessly delay this cause of action while having no effect on its outcome.

The alternative scenario is that the reissued patent will add claims to the original '414 patent and broaden the scope of that patent.  If the patent is broadened in such a way, the plaintiffs will be protected by the doctrine of intervening rights. See *Seattle Box Company, Inc. v. Industrial Crating and Packing Inc.*, 756 F.2d 1574, 1578-79 (Fed. Cir. 1985); *Southern Saw Service, Inc. v. Pittsburgh-Erie Saw Corporation*, 239 F.2d 339, 342 (5th Cir. 1956), *cert. denied*, 353 U.S. 964 (1957).  This doctrine protects those who make, purchase, offer to sell, or use anything patented by the reissued patent that was not included in the original patent.  35 U.S.C. § 252.  Thus, the defendants' claim that an action may be filed for infringement of the potential new claims of the reissued patent after the present case is resolved is unpersuasive.  A stay under this scenario would also needlessly delay the plaintiffs' cause of action while having no effect on its outcome.

Because the defendants' pending proceedings with the USPTO will not substantially simplify or affect the issues in this case or the trial of this case, the second part of the *Xerox* test tilts toward denial of the defendants' motion for stay.

                  3. *Have the parties completed discovery and has a trial date been set?*

The defendants correctly assert that "this case is not in an advanced stage of litigation." Defendants' Reply at 3. As the defendants point out, no answer or dispositive motions have been filed, discovery has not yet commenced, and a trial date is nowhere in sight. Even so, these facts do not add much weight to the defendants' request for a stay. Although the advanced nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference -- that a suit in the early stages should weigh heavily in favor of a stay -- is not true. As a case progresses through the stages of litigation, the grant of a stay generally becomes more costly to the parties and to the court. Yet, just as the absence of a negative inference does not create a positive inference, so also the lesser cost of granting a stay early in the litigation process does not equate to a factor favoring a stay; the lower cost simply indicates the best time to grant a stay is in the early stages of litigation.

## III.  CONCLUSION

As noted above, the first two factors of the *Xerox* test weigh against granting a stay, and the third factor provides little, if any, weight in favor of a stay. Accordingly, the defendants' motion to stay and administratively close the case is **DENIED**.

In accordance with the court's order of January 4, 2006, the defendants shall answer or otherwise respond to the plaintiffs' amended complaint within 20 days of this date.

**SO ORDERED**.

September 11, 2006.

_____
A. JOE FISH
CHIEF JUDGE